USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #:_____
DATE FILED:_____12/2/16__

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

------------------------------------------------------------- X
ALICIA ZAMBRANA, *on behalf of herself and others similarly situated*,

                         Plaintiff,

                -against-

PRESSLER AND PRESSLER, LLP; SHELDON H. PRESSLER, GERARD J. FELT; LAWRENCE J. MCDERMOTT, JR.; DAVID B. WARSHAW; ARISTOTLE SANGALANG; ABSOLUTE RESOLUTIONS VI, LLC; BUREAUS INVESTMENT GROUP PORTFOLIO NO. 15 LLC; THE BUREAUS, INC.; *and* BUREAUS INVESTMENT GROUP III, LLC;

                        Defendants.
------------------------------------------------------------- X

16-CV-2907 (VEC)

**MEMORANDUM
OPINION & ORDER**

VALERIE CAPRONI, United States District Judge:

**INTRODUCTION**

      Plaintiff Alicia Zambrana brings this putative class action against various assignee creditors of a credit card account originated by Household Bank N.A. and the assignee creditors' agents, alleging violations of the Fair Debt Collections Practices Act ("FDCPA"), 15 U.S.C. § 1692, and New York General Business Law § 349. Defendants now move to compel arbitration based on the arbitration provision in Plaintiff's cardholder agreement. For the following reasons, Defendants' motions to compel arbitration are GRANTED.[1]

---

[1]     Defendants Pressler & Pressler LLP, Gerard Felt, Sheldon Pressler, David Warshaw and Lawrence McDermott filed one motion to compel arbitration (Dkt. 69), which the Court will cite as "Pressler Defs. Mem." Defendants Bureaus Investment Group III LLC, Bureaus Investment Group Portfolio No. 15 LLC, the Bureaus Inc., Absolute Resolutions VI LLC, and Aristotle Sangalang filed a separate motion to compel arbitration (Dkt. 72), which the Court will cite as "Collector Defs. Mem."

1

## BACKGROUND

Plaintiff applied for and received a Best Buy-branded credit card from Household Bank N.A. ("HSBC").[2] Am. Compl. ¶ 108 (Dkt. 53). The account's activation date is unclear, but Plaintiff entered into a cardholder agreement as of at least 2003 ("2003 Agreement"). Am. Compl. Ex. 16 (Dkt. 53-16). The 2003 Agreement includes an arbitration provision. Am. Compl. Ex. 16 ¶ 6 (Dkt. 53-16). In May 2010, HSBC allegedly sent an amended cardholder agreement ("2010 Agreement") in response, at least in part, to new requirements imposed by the Credit Card Accountability Responsibility Disclosure Act ("CARD Act"). Declaration of Eric Gribben ("Gribben Decl.") ¶¶ 4, 7 (Dkt. 81-3). The 2010 Agreement has a revised arbitration provision that includes the ability to opt out of arbitration if notice was given within thirty days of receipt of the new agreement.[3] Pl. Opp. Ex. B (Dkt. 77-2). Plaintiff did not opt out of arbitration and continued to use the credit card until 2011.[4] Collector Defs. Reply 7; Am. Compl. Ex. 17 at 7, 35 (Dkt. 53-17).

Plaintiff's credit card account has been assigned numerous times to various creditors. In May 2012, when HSBC spun off its credit card operation to non-party Capital One, National Association ("Capital One"), HSBC assigned the account to Capital One. Collector Defs. Mem 4 (Dkt. 72). In mid-2012, Plaintiff defaulted on her credit card debt, and Capital One charged off

---

[2]   In the early 2000s, Household Bank, a large commercial lender, was acquired by HSBC, a large international bank.

[3]   The change in the arbitration clause was not related to the changes required by the CARD Act. Collector Defs. Reply 6 & n.4 (Dkt. 81); Declaration of Eric J. Gribbin ("Gribbin Decl.") ¶ 6 (Dkt. 81-3).

[4]   Plaintiff submitted bank statements with her Amended Complaint covering July 2, 2010 through March 30, 2012. Am. Compl. Ex. 17. According to those limited statements, Plaintiff last used the card to make a purchase on October 11, 2010, *id.* at 7, and Plaintiff last made a down payment on the card's balance on December 22, 2011, *id.* at 35.

the account. *Id.* After various assignments,[5] Defendant assignee Absolute filed suit in New York State court through its attorneys, Pressler & Pressler, LLP, in order to collect Plaintiff's debt; that suit is currently pending. *Id.*

In response to that state court action, Plaintiff filed this suit against Pressler & Pressler, individual lawyers at Pressler & Pressler,[6] the Bureaus Inc., Aristotle Sangalang, who is president of the Bureaus Inc. (collectively, the "Agent Defendants"), and various creditor assignees (collectively, "Assignee Defendants"), alleging violation of the FDCPA and New York General Business Law § 349. Am. Compl. ¶ 4. Plaintiff claims that the state court action is an abusive debt collection practice in violation of the FDCPA because there are false and misleading statements and omissions in Absolute's complaint against Plaintiff. *Id.* ¶ 5(viii). Plaintiff further alleges that even those Defendants who did not file the state court action—i.e., all Defendants except Pressler & Pressler and Absolute—are liable for their deceptive practices when selling Plaintiff's credit card account, namely Defendants knew the debt was not properly assigned but nevertheless attempted to collect the debt and provided a false pretense on which Absolute is now attempting to collect on the debt. *Id.* ¶¶ 5(ix), 196.

Defendants move to stay this action and to compel arbitration. Plaintiff opposes with a sort of "heads I win, tails you lose" argument. She asserts that because Defendants have not proven that HSBC sent the 2010 Agreement to her specifically, although they did send it to other cardholders, not only is the 2003 Agreement superseded and of no effect, but the 2010

---

[5] In September 2012, Capital One assigned Plaintiff's account to Defendant Bureaus Investment Group III, LLC ("BIGIII"). Collector Defs. Mem. 4. Subsequently, in October 2012, BIG III assigned the account to its subsidiary, Defendant Bureaus Investment Group Portfolio No. 15 ("BIGP15"). *Id.* BIGP15 then assigned it to non-party Absolute Resolutions Corporation in May 2014. *Id.* Finally, Absolute Resolutions assigned it to its subsidiary, Defendant Absolute Resolutions VI, LLC ("Absolute"). *Id.*

[6] Defendants Sheldon Pressler, Gerard Felt, Lawrence McDermott, and David Warshaw are partners at Pressler & Pressler LLP. Am. Compl. ¶¶ 20, 32, 41, 48.

Agreement is also inoperative.  Further, because Defendants have not shown that she was sent the 2010 Agreement, her failure to opt out of arbitration, she asserts, is of no moment.  Plaintiff cannot have it both ways.  Either the 2010 Agreement was sent to her so that her failure to opt out of arbitration means that she is bound by the 2010 Agreement, or it was never sent to her, in which case the 2003 Agreement with its arbitration provision remains in force.  Either way, because the Court finds that a valid arbitration agreement exists, that it covers the dispute, and that Defendants have standing to compel arbitration pursuant to the agreement, the motions to compel arbitration and to stay this action are GRANTED.

## DISCUSSION

### I. Legal Standard

The Federal Arbitration Act ("FAA") embodies a strong "national policy favoring arbitration."  *AT & T Mobility LLC v. Concepcion*, 563 U.S. 333, 346 (2011); *see also Ross v. Am. Express Co.*, 547 F.3d 137, 142 (2d Cir. 2008).  For that reason, "any doubts concerning the scope of arbitrable issues should be resolved in favor of arbitration . . . ,"  *Moses H. Cone Memorial Hosp. v. Mercury Construction Corp.*, 460 U.S. 1, 24-25 (1983), and courts should "construe arbitration clauses as broadly as possible,"  *David L. Threlkeld & Co. v. Metallgesellschaft Ltd.*, 923 F.2d 245, 250 (2d Cir. 1991) (quotation marks and citation omitted).

Pursuant to the FAA, a district court must grant a motion to compel arbitration if a valid arbitration agreement exists and if the scope of the agreement governs the issues in the case.  *See* 9 U.S.C. § 4; Buchman v. Weiss, No. 08 CIV.5453 (RJS), 2009 WL 2044615, at *2 (S.D.N.Y. July 15, 2009) (quoting *Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Belco Petroleum Corp.*, 88 F.3d 129, 135 (2d Cir. 1996)).  Whether an arbitration agreement exists is a preliminary determination for the court to decide.  *See BG Grp., PLC v. Republic of Argentina*, 134 S. Ct.

1198, 1206 (2014); *see also John Hancock Life Ins. Co. v. Wilson*, 254 F.3d 48, 53 (2d Cir. 2001) ("Unless the parties clearly and unmistakably provide otherwise, the question of whether the parties agreed to arbitrate is to be decided by the court, not the arbitrator." (quotation marks and citations omitted)). Moreover, "[b]ecause an agreement to arbitrate is a creature of contract . . . the ultimate question of whether the parties agreed to arbitrate is determined by state law." *Bell v. Cendant Corp.*, 293 F.3d 563, 566 (2d Cir. 2002). To determine whether an arbitration agreement exists, a district court applies a "standard similar to that applicable for a motion for summary judgment." *Bensadoun v. Jobe-Riat*, 316 F.3d 171, 175 (2d Cir. 2003). It is, therefore, "proper (and in fact necessary) to consider extrinsic evidence when faced with a motion to compel arbitration." *BS Sun Shipping Monrovia v. Citgo Petroleum Corp.*, No. 06–CV–839 (HB), 2006 WL 2265041, at *3 n.6 (S.D.N.Y. Aug. 8, 2006). Once the movant has satisfied its initial burden to demonstrate the existence of an agreement to arbitrate, the burden shifts to the opposing party to "demonstrate a substantial issue on the existence *vel non* of an agreement to arbitrate." *Scone Investments, L.P. v. Am. Third Mkt. Corp.*, 992 F. Supp. 378, 381 (S.D.N.Y. 1998) (quotation marks and citations omitted).

As to the scope of the arbitration agreement, if the agreement is broad such that it requires arbitration of "any and all disputes," then "there arises a presumption of arbitrability." *Edwards v. Macy's Inc.*, No. 14-CV-8616 (CM), 2015 WL 4104718, at*10 (S.D.N.Y. June 30, 2015) (citing *Collins & Aikman Prods. Co. v. Bldg. Sys., Inc.,* 58 F.3d 16, 23 (2d Cir. 1995)). "Only if the agreement is a narrow one does the court examine the possibility that contract construction might not be arbitrable." *Id.* (citing *Louis Dreyfus Negoce S.A. v. Blystad Shipping & Trading Inc.*, 252 F.3d 218, 224 (2d Cir. 2001)). The parties do not disagree that the scope of

the arbitration agreement would cover this dispute; Plaintiff only disputes whether a valid arbitration agreement exists.

## II.     A Valid Arbitration Agreement Exists

The 2003 Agreement provides: "Any claim, dispute or controversy . . . shall be resolved, upon the election of you or us, by binding arbitration pursuant to this arbitration provision and the applicable rules or procedures of the arbitration administrator selected at the time the Claim is filed." Am. Compl. Ex. 16 ¶ 6. This provision unequivocally covers Plaintiff's claims against Defendants. The arbitration agreement also precludes class actions without the consent of both parties. *Id.*

Plaintiff argues that the 2003 Agreement attached as an exhibit to her Amended Complaint may have been terminated or superseded in 2010 when HSBC updated its cardholder agreements. Pl. Opp. 1-2 (Dkt. 77). Plaintiff contends that Defendants cannot meet their burden to prove that she received the 2010 Agreement and is thus bound by that superseding cardholder agreement, including the arbitration provision. *See* Pl. Opp. 4-12; Pl. Sur-Reply 1-4 (Dkt. 87). Thus, according to Plaintiff, because there is uncertainty surrounding whether she received the 2010 Agreement, there is a substantial issue as to whether an arbitration agreements exists.

Notwithstanding Plaintiff's argument, there is no substantial issue that an arbitration agreement exists between the parties. The 2003 Agreement and its arbitration provision are binding on Plaintiff. Plaintiff relies on the 2003 Agreement in her Amended Complaint, s*ee* Am. Compl. ¶¶ 108, 190, 196(a); *id.* Ex. 16, and she alleges that the credit card was issued to her, *see id.* ¶ 108. "[T]he allegations in the [complaint] are 'judicial admissions' by which [plaintiff is] 'bound through the course of the proceeding.'" *Official Comm. of the Unsecured Creditors of Color Tile, Inc. v. Coopers & Lybrand. LLP*, 322 F.3d 147, 167 (2d Cir. 2003) (quoting

6

*Bellefonte Re Ins. Co. v. Argonaut Ins. Co.*, 757 F.2d 523, 528 (2d Cir. 1985)).  Plaintiff is bound by her admission in her Amended Complaint that she was issued the Best Buy-branded credit card pursuant to the 2003 Agreement.

Plaintiff argues that these references and statements in her Amended Complaint are not judicial admissions that the credit card belonged to her or that she received and agreed to the 2003 Agreement.  *See* Pl. Opp. 10-12.  Instead, according to Plaintiff, those allegations are merely intended to reflect that there are credit card account statements in Plaintiff's name and that Defendants believe Plaintiff owes the debt.  *See id.*  Nowhere, however, does Plaintiff affirmatively allege that this credit card does not belong to her, nor does she allege any facts from which one could plausibly infer that the credit card does not belong to her.  Plaintiff's counsel merely attests that "Plaintiff always has insisted that she has no memory of having this credit card," Declaration of Mitchell Pashkin ("Pashkin Decl.") ¶ 9 (Dkt. 79), while Plaintiff attests that she "had [sic] no recollection of ever seeing" the 2003 Agreement before her attorney showed it to her, *see* Declaration of Alicia Zambrana ("Zambrana Decl.") (Dkt. 78).  Even if those statements can be read to constitute an allegation that the credit card was not actually issued to her, they do not demonstrate a substantial issue on the existence *vel non* of the 2003 agreement to arbitrate.  *See Scone Investments, L.P. v. Am. Third Mkt. Corp.*, 992 F. Supp. at 381 ("In order to establish a substantial issue of fact, plaintiffs must unequivocally deny that they entered into an agreement to arbitrate with movants and should offer at least some evidence to substantiate their factual allegations." (citing *Doctor's Associates, Inc. v. Jabush*, 89 F.3d 109, 114 (2d Cir. 1996)).  Moreover, the theory of Plaintiff's case as articulated in her Amended Complaint is that Defendant Absolute is attempting to collect the credit card debt illegally because ownership of the debt was not properly assigned from HSBC to the successor

creditors—not because Plaintiff does not owe the debt or own the credit card. Accordingly, Plaintiff is bound by the terms of the 2003 Agreement.

Defendants have not, however, met their burden to show that Plaintiff received notice of and is thus bound by the revised 2010 Agreement. It is "well settled law" that notice of an offer to contract must be provided to an offeree before acceptance can be valid. *See MBNA Am. Bank, N.A. v. Nelson*, 841 N.Y.S.2d 826 (Civ. Ct. 2007); *see also Trimble v. N.Y. Life Ins. Co.*, 255 N.Y.S. 292, 295 (App. Div. 1932) ("An offer may not be accepted until it is made and brought to the attention of the one accepting."). When the record shows that there was an ordinary office procedure for mailing, a court can presume that an individual who was a customer during the relevant time period would have received notice of the updated agreement terms. *See Ma v. Merrill Lynch, Pierce, Fenner & Smith, Inc.,* 597 F.3d 84, 92 (2d Cir. 2010) ("[A] presumption of receipt arises where . . . the record establishes office procedures, followed in the regular course of business, pursuant to which notices have been addressed and mailed." (citations omitted)).

Defendants have submitted a declaration from Eric Gribbin in an attempt to demonstrate that HSBC mailed the 2010 Agreement to all Best Buy cardholders, including Plaintiff. During the relevant time period, Gribbin was responsible for the Best Buy credit card portfolio as Senior Legal Counsel for HSBC's Credit Card and Retail Services law department; Gribbin states that the Notice, which he helped develop, was sent to all HSBC Best Buy cardholders, that Plaintiff was a cardholder at the time, and that the Notice "would have been" mailed to her at the address on file. Gribbin Decl. ¶¶ 2, 5, 7. Because, however, Gribbin does not purport to have first-hand knowledge of whether the 2010 Agreement was sent to Plaintiff and does not describe a standard office mailing procedure, Defendants have no evidence that the 2010 Agreement was sent to

Plaintiff or that she otherwise received the 2010 Agreement.  *See SEC v. Espuelas*, 905 F. Supp. 2d 507, 522 n.6 (S.D.N.Y. 2012) (determining "presumption of receipt" requires "admissible evidence of the fact of mailing, such as testimony from the person who actually mailed the letter" or "where the record establishes office procedures, followed in the regular course of business, pursuant to which notices have been addressed and mailed" (citations omitted)); *see also Bronia, Inc. v. Ho*, 873 F. Supp. 854, 859 (S.D.N.Y. 1995) ("To invoke the presumption, a party must first produce evidence of mailing, either by offering the testimony of the person who actually mailed the letter or through indirect evidence such as proof that the mail was sent through office procedures followed in the regular course of business." (citation omitted)); *Frankel v. Citicorp Ins. Services, Inc.*, 913 N.Y.S.2d 254, 258 (App. Div. 2010) (holding an "affidavit of the senior vice-president . . . was insufficient to demonstrate personal knowledge of actual mailing."); *Matter of Lumbermens Mut. Cas. Co. (Collins)*, 521 N.Y.S.2d 432, 434 (App. Div. 1987) (holding presumption of receipt not established, even though the challenger's name had been listed on a print-out as a customer to whom notice was sent, because "internal precautionary procedures" were not described).

      The failure to prove mailing or receipt of the 2010 Agreement is of no moment, however, because even if Plaintiff never received the 2010 Agreement, she continues to be bound by the arbitration provision in the 2003 Agreement.  If HSBC never mailed the updated agreement to Plaintiff, there is no agreement to supersede the 2003 Agreement, and Plaintiff continues to be bound by its terms.  Similarly, if HSBC mailed the updated agreement, but Plaintiff never received it and thus did not consent to it because she did not have notice, the parties continue to be bound by the 2003 Agreement because it was never superseded.  *See Marine Transp. Lines, Inc. v. Int'l Org. of Masters, Mates & Pilots*, 878 F.2d 41, 46 (2d Cir. 1989) (terms of a prior

contract still govern to the extent not inconsistent with any new terms); *GEM Advisors, Inc. v. Corporacion Sidenor, S.A.*, 667 F. Supp. 2d 308, 328 (S.D.N.Y. 2009) (determining that because the new agreement was invalid, the prior agreement still controlled); *Phillips v. CIGNA Inv., Inc.*, 27 F. Supp. 2d 345, 359 (D. Conn. 1998) (holding that employer sending employee an arbitration agreement and employee continuing to work did not manifest consent to make the agreement part of the original employment contract, thus the original contract governed).[7] Therefore, the Defendants have established that a valid arbitration agreement exists—the 2003 Agreement—and it governs the dispute.

## III.    Defendants Can Enforce the Arbitration Agreement

Plaintiff argues that even if there is an arbitration agreement, Defendants lack standing to enforce it because the credit card debt was improperly assigned from HSBC to Capital One—and thus also improperly assigned to the subsequent assignees. Specifically, Plaintiff contends Defendants cannot enforce the arbitration agreement because they have failed to prove a complete chain of title establishing ownership of Plaintiff's credit card debt. *See* Pl. Opp. 13-24; Pl. Sur-Reply 4-5. Defendants counter that they have presented sufficient proof that the account was assigned and thus can enforce the arbitration clause as either assignees or agents of an assignee. Collector Defs. Reply 2, 3-5. The Court finds that Defendants have adequately established for the purpose of these motions that Plaintiff's credit card account was assigned to Capital One and the Assignee Defendants and that Defendants can thus enforce the arbitration agreement as assignees or agents of the assignees.

---

[7]    To the extent any provisions in the 2003 Agreement may have been invalidated by the CARD Act, that would not invalidate the arbitration provision. *See Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 446 (2006) ("As a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract.").

### A. Defendants BIGIII, BIGP15, and Absolute Can Enforce the Arbitration Agreement as Assignees

"Under New York law, an arbitration clause is generally held to apply to the assignee of a contract." *See Variblend Dual Dispensing Sys., LLC v. Seidel GmbH & Co., KG*, 970 F. Supp. 2d 157, 166 (S.D.N.Y. 2013) (citing *Lipman v. Haeuser Shellac Co.*, 289 N.Y. 76, 81 (1942)) (citations omitted); *see also Jugometal v. Samincorp, Inc.*, 78 F.R.D. 504, 507 (S.D.N.Y. 1978) ("An assignee has the same standing to enforce an arbitration award in this Court as its assignor would have . . . ."). A party must prove assignment of a contract by a preponderance of the evidence. *See Solar & Envtl. Techs. Corp. v. Zelinger*, 726 F. Supp. 2d 135, 143, 148 (D. Conn. 2009) (holding that under New York law, party seeking to enforce arbitration agreement must prove agreement by preponderance of the evidence (citing *Progressive Cas. Ins. Co. v. C.A. Reaseguradora Nacional de Venezuela*, 991 F.2d 42, 46 (2d Cir. 1993)); *Empire Lighting Fixture Co. v. Browning*, 157 N.Y.S. 284, 286 (App. Term 1916) (finding assignment of contract based on preponderance of evidence).

To prove assignment, Defendants have submitted (1) an affidavit by a Capital One Litigation Support Representative who reviewed Capital One's business records and (2) a bill of sale executed by HSBC and Capital One. The Capital One representative avers that Capital One acquired certain HSBC credit card accounts on May 1, 2012, including Plaintiff's Best Buy-branded account ending in 2166. Declaration of Grace von Ancken ("Von Ancken Decl.") ¶ 3 (Dkt. 72-4). The Bill of Sale assigned to Capital One HSBC credit card accounts such as Plaintiff's, including all rights and interest in the accounts. Collector Defs. Reply Ex. A (Dkt. 81-1).[8] Plaintiff only takes issue with Defendants' proof of assignment from HSBC to Capital

---

[8] The Bill of Sale is admissible as a business record subject to authentication. Fed. R. Evid. 803(6); *see, e.g., United States v. Hines*, 564 F.2d 925, 928 (10th Cir. 1977) (holding bill of sale properly admitted as business record); *Miller v. Wolpoff & Abramson, LLP*, No. 1:06-CV-207 (TS), 2007 WL 2694607, at *9 (N.D. Ind. Sept. 7,

One.  The parties do not dispute that Plaintiff's credit card account was subsequently assigned to BIGIII, BIGP15, and Absolute, and the parties included in the record bills of sale, affidavits of sale, conformities of sale, and transfer agreements reflecting those assignments.  Pashkin Decl. Ex. 2 (Dkt. 79-2).  For the purpose of enforcing the arbitration agreement, Defendants have satisfied their burden to prove by a preponderance of the evidence that Plaintiff's account and corresponding cardholder agreement were assigned.

Plaintiff, pointing to New York debt collection cases, contends that Defendants have not presented sufficient proof to establish a complete chain of title.  This, however, is not a debt collection case; it is an FDCPA case in which Plaintiff alleges Defendants have improperly attempted to collect the credit card debt from her in a separate lawsuit.  The "special proof" required by New York law to establish a credit card account assignee's claim on the account does not apply here because the Assignee Defendants are not pursuing a claim on Plaintiff's credit card account *in this case*, although it may apply to the separate New York Supreme Court lawsuit that spawned this case.  *See Citibank (S. Dakota), N.A. v. Martin*, 807 N.Y.S.2d 284, 291 (Civ. Ct. 2005) (holding that claims by an assignee of a credit card account require "special proof," i.e., proof of assignment of a particular account or evidence of consideration paid and delivery of the assignment if an oral assignment).

---

2007) (holding bill of sale of credit card account was admissible as a business record), *aff'd*, 309 F. App'x 40 (7th Cir. 2009).  Although Plaintiff disputes that the Bill of Sale suffices to establish assignment, she does not dispute the Bill of Sale's authenticity. Pl. Sur-Reply 4-5.  Defendants have not authenticated the Bill of Sale, but "even inadmissible evidence may properly be considered on summary judgment if it may reasonably be reduced to admissible form at trial." *Parks v. Blanchette*, 144 F. Supp. 3d 282, 293 (D. Conn. 2015)(quotation marks and citations omitted); *see also Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986) ("We do not mean that the nonmoving party must produce evidence in a form that would be admissible at trial in order to avoid summary judgment.").  Because a summary judgment-like standard applies to motions to compel arbitration, *Bensadoun v. Jobe-Riat*, 316 F.3d at 175, the Court considers the Bill of Sale for the purpose of resolving the motion to compel arbitration.

Accordingly, BIGIII, BIGP15, and Absolute can enforce the arbitration agreement as assignees.

### B. Sanglang, Pressler & Pressler, Pressler & Pressler's Partners, and the Bureaus, Inc. Can Enforce the Arbitration Agreement as Agents of the Assignees

Agent Defendants—Sangalang, Pressler & Pressler and its partners, and the Bureaus, Inc.—may enforce the arbitration provision in Plaintiff's cardholder agreement as agents of the Assignee Defendants. "Traditional principles of agency law may bind a nonsignatory to an arbitration agreement." *See Thomson-CSF, S.A. v. Am. Arbitration Assoc.*, 64 F.3d 773, 777 (2d Cir. 1995)). "A non-signatory to an arbitration agreement may benefit from that agreement where the legal basis for, and the factual context of, the claims alleged against the non-signatory are the same as the claims alleged against the signatory where the non-signatory is the disclosed agent or principal of the signatory." *Hoffman v. Aaron Kamhi, Inc.*, 927 F. Supp. 640, 643 (S.D.N.Y. 1996) (citing *Roby v. Corporation of Lloyd's*, 996 F.2d 1353, 1360 (2d Cir. 1993), *cert. denied*, 510 U.S. 945 (1993)); *see also McKenna Long & Aldridge, LLP v. Ironshore Specialty Ins. Co.*, No. 14-CV-6633 (KBF), 2015 WL 144190, at *7 (S.D.N.Y. Jan. 12, 2015) ("[T]he corporate agent may use the arbitration provision as a sword to compel arbitration, which is to say, a shield against litigation before a court.").

Pressler & Pressler, as well as the individually-named lawyers, may enforce the arbitration agreement as agents of Absolute. *See Veal v. Geraci*, 23 F.3d 722, 725 (2d Cir. 1994) (holding attorneys act as agents for their clients). Plaintiff herself bases her allegations against these Defendants on their agency relationship with Absolute, Am. Compl. ¶ 138; Pressler & Pressler and its attorneys are disclosed agents for Absolute because they openly represent Absolute in the separate debt collection lawsuit. Plaintiff's claims against Pressler & Pressler and its law partners are also the same as her claims against the Assignee Defendants.

Additionally, Plaintiff alleges that Sangalang, President of Bureaus, Inc., was the agent of BIGP15 in executing the purportedly invalid sale agreements transferring Plaintiff's credit card account from BIGIII to BIGP15 and from BIGP15 to Absolute Resolutions.  Am. Compl. ¶ 195.  Sangalang may thus enforce the arbitration provision as agent of assignee BIGP15.  *See Hirschfield Prods., Inc. v. Mirvish*, 88 N.Y.2d 1054, 1056 (1996). ("The Federal courts have consistently afforded agents the benefit of arbitration agreements entered into by their principals to the extent that the alleged misconduct relates to their behavior as officers or directors or in their capacities as agents of the corporation." (citations omitted)); *see also Hamerslough v. Hipple*, No. 10 CIV. 3056 (NRB), 2010 WL 4537020, at *2-3 (S.D.N.Y. Nov. 4, 2010) (holding that non-signatory corporate directors could enforce the arbitration agreement as agents).  Likewise, Plaintiff is suing the Bureaus, Inc. as an agent of BIGP15 and BIGIII because the Bureaus, Inc. "is the master servicer for BIGP15" and "maintains all electronic and paper business records for BIGIII and BIGP15."  Am. Compl. ¶ 193.  Accordingly, the Bureaus, Inc. may enforce the arbitration provision as an agent of assignees BIGP15 and BIGIII.

## CONCLUSION

For the foregoing reasons, Defendants' motions to compel arbitration are GRANTED. The Clerk of Court is respectfully directed to terminate docket entries 68 and 71.  The case will remain stayed pending arbitration.  The parties must submit joint letters on a quarterly basis informing the Court of the status of the arbitration proceeding; the first letter is due no later than March 1, 2017.

**SO ORDERED.**

Date:  December 2, 2016                              VALERIE CAPRONI
       New York, New York                            United States District Judge

14